

U.S. Department of Justice

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

November 16, 2020

BY ECF

Hon. Lewis J. Liman
United States District Judge
Daniel Patrick Moynihan U.S. Courthouse
500 Pearl Street
New York, New York 10007

Re:  *United States v. Anthony Guzzone*, 20 Cr. 354 (LJL)

Dear Judge Liman:

The United States respectfully submits this letter in opposition to defendant Anthony Guzzone's motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) (ECF No. 33.)

For the reasons set forth below, the motion should be denied.  First, the defendant has not exhausted (or even initiated) his administrative remedies. Second, the defendant has failed to show an extraordinary and compelling reason permitting relief, particularly given that he has been vaccinated against COVID-19 (shortly after arriving in the custody of the Bureau of Prisons ("BOP")). Third, the motion should be denied based on the factors set forth in 18 U.S.C. § 3553(a), including the seriousness of the defendant's offense, the fact that he has served less than seven months of his 38-month sentence, and the fact he has not described any sentencing factors that were not already known to the Court at the time of sentencing.

## I. BACKGROUND

### a. The Defendant's Offense Conduct, State and Federal Guilty Pleas, and Sentencing

Prior to being charged in the instant case, the defendant was one of numerous co-conspirators charged in New York Supreme Court in a 72-count indictment with participating in a massive scheme "to steal money from [his employer] Bloomberg LLP by inflating subcontractor bids, creating fictitious change and/or work orders, and misappropriating unused allowance money." (Presentence Investigation Report ("PSR") ¶ 48.)  As part of that scheme, Guzzone and other construction managers at Bloomberg and Turner Construction conspired with subcontracting companies to assist in carrying out thefts from Bloomberg by "bid-rigging, falsifying business records, and the paying [and receiving] of commercial bribes." (*Id*.)  The scheme was concealed, in part, through the "laundering of criminal proceeds." (*Id*.)  As stipulated in his federal plea agreement (Attachment 1 hereto), Guzzone was one of the leaders and organizers of the scheme, which lasted for eight tax years, and involved five or more participants as bribe-recipients. (*Id.* ¶ 2.)

On August 17, 2020, also prior to pleading guilty in the instant case, the defendant pled guilty in New York Supreme Court to money laundering in the third degree, a class D felony, in violation of New York Penal Law §§ 470.10(1)(b)(i)(A) and (iii). (PSR at 4 n.1.)

On September 29, 2020, before this Court, the defendant pleaded guilty to a one-count Information charging him with tax evasion for the tax years 2010 through 2017. The defendant—

a well-educated, highly-compensated, construction-industry official—led a multi-year fraud scheme to solicit and pocket unlawful payments in the form of bribes and kickbacks. As the PSR makes clear, during the years when he was serving as a leader of the bribery/kickback scheme, Guzzone was being paid a salary of hundreds of thousands of dollars per year, providing him a comfortable lifestyle and economic security. The defendant then furthered that scheme by willfully failing to report the illicit income on his income tax returns, resulting in significant tax evasion. The defendant's tax crimes spanned eight separate tax years and involved not only the willful omission of over $1,450,000 of bribe income from his federal and state tax returns, but untold losses to his employer through the underlying honest services fraud.

On January 19, 2021, this Court sentenced the defendant to 38 months of imprisonment, three years of supervised release, and restitution in the amount of $574,005.33. While this sentence of 38 months' imprisonment was unquestionably substantial, as required by the seriousness of the defendant's offense conduct, the defendant was the only one of the four targets of this investigation who received a sentence below the applicable Guidelines range. The two co-conspirators whose conduct most closely paralleled that of the defendant were respectively sentenced to 46 months and 51 months of imprisonment.[1] Similarly, while the restitution imposed in this case was also substantial, it had the effect of separating the defendant only from the taxes that he owed on the $1.45 million in bribes that he received. The defendant continues to enjoy the financial fruits of his bribery, having never repaid the bribes themselves. Nor has he paid any restitution to Bloomberg, the victim of his related honest services fraud.

The defendant has yet to be sentenced for his state bribery conviction. (Mot.[2] at 36 (defendant's attached letter of Oct. 22, 2021.)) At the defendant's request, the federal plea agreement in this case (Attachment 1 hereto) expressly provided that the Government would not object to the defendant's efforts to have his sentencing before this Court precede his sentencing in New York Supreme Court. (*See* Att. 1 at p.2 n.1.) The defendant sought this arrangement—to which the Government did not object—so that he could effectuate his state plea agreement with the New York District Attorney's Office, which provided that his state prison term will be concurrent with his federal prison term. (*Id.*)

**b. The Defendant's Motion for Request for Compassionate Release**

Less than seven months ago, on April 19, 2021, the defendant surrendered to the custody of BOP at the Federal Correctional Institution ("FCI") at Ft. Dix, to begin serving his 38-month sentence. His projected release date is December 29, 2023. https://www.bop.gov/mobile/find_inmate/byname.jsp.

The defendant's motion for compassionate relief asks that he be released to home confinement with his wife, children, and parents-in-law, at his home in New Jersey. Defendant bases this request on the COVID-19 epidemic and his asthma condition, both of which were fully before this Court at the time of sentencing.

The defendant's motion leaves out a number of important facts. First, the defendant's motion makes no mention of his apparent failure to make any administrative request to the warden of FCI Ft. Dix. BOP informs the Government that no such request has been filed.

---

[1] *See United States v. Olson,* 20 Cr. 356 (PKC) and *United States v. Nigro,* 20 Cr. 370 (AT).

[2] "Mot." refers to Defendant's Motion for Compassionate Relief Pursuant to 18 USC §3582(c)(1)(A), ECF No. 33.

Second, the defendant's motion makes no mention of the fact that he had not obtained a COVID-19 vaccination prior to surrendering to the BOP, but that shortly after his arrival in BOP custody in April 2021, he was provided with a two-dose regimen of the Moderna vaccine. He was administered his first COVID-19 vaccination on May 12, 2021, and his second on June 9, 2021. (Med. Rec. 5, 9, 45.) [3]

According to the defendant's BOP medical records (attached hereto under seal), the defendant was first seen by BOP medical personnel on the date of his surrender, April 19, 2021. As was already reflected in the defendant's PSR (¶ 66), the defendant described a history of asthma, and was promptly provided with two different types of anti-asthma inhalers—one containing albuterol and the other the mometasone furoate, a corticosteroid. (Med. Rec. 7-8, 13, 39.) He has also been provided with refills when needed. (*Id.*) The defendant's medical records do not report any asthma attack during his incarceration, or any other asthma-related issues or complaints during his incarceration. There is also no indication in those records that the defendant's asthma condition is moderate or severe (that is, that his asthma is of a severity recognized by the CDC as subjecting him to a higher risk of serious illness should he contract COVID-19). Specifically, the defendant's medical records reflect that he has had asthma since 2001, with no history of endotracheal intubation. His pattern of asthma has been unchanged since its inception in 2001, with "no worsening of it or new symptom." (Med. Rec. 4.) Nothing in the defendant's Medical Records suggest that his asthma is not well controlled with the medication provided by the institution, nor that the defendant is anything other than fully ambulatory and engaged in all normal "activities of daily living." It should also be noted that this asthma condition—as well as the COVID-19 epidemic—was known to this Court at the time of sentencing.[4]

### c. BOP's Response to the COVID-19 Pandemic

From the earliest days of the pandemic, BOP has made extensive changes to its operations, based on a plan that was prepared over many years, and refined in early 2020 in consultation with the Centers for Disease Control and the World Health Organization. Those efforts continue.

The Government recognizes that the COVID-19 case rate at a particular institution may change at any time. The Government therefore focuses primarily on considerations specific to the

---

[3] "Med. Rec." refers to the copy of the defendant's BOP Medical Records, provided herewith under seal.

[4] The defendant's letter attached to his motion also states that one of his co-conspirators in a related case, Michael Campana, "was granted Home Confinement after serving 8 months of his 24-month federal sentence, granted through the CARES Act." (Mot. at 38, ltr. at 3.) This assertion is misleading and irrelevant. Campana filed no motion for compassionate relief pursuant to Section 3582(c)(1)(A)(i), nor any other motion before the sentencing court. *See* Docket Sheet, *United States v. Campana,* 19 Cr. 859 (DC) (S.D.N.Y.) Rather, BOP informs us that Campana was "transferred to CARES Act home confinement" by BOP after serving some portion of his sentence. (*See* n.5, *infra.*) At present, however, Campana has been returned to the custody of the BOP, and, according to the BOP website, is housed at the Metropolitan Detention Center ("MDC") in Brooklyn. https://www.bop.gov/mobile/find_inmate/byname.jsp. Moreover, it is the Government's understanding that Guzzone, once he is sentenced in state court, will be subject to a New York State detainer, so that he will be transferred to state custody at the completion of his federal sentence. That is not the case with Campana.

defendant. But BOP's success at many institutions in limiting the spread of the virus, and in stemming outbreaks when they occur, provides an important backdrop for the defendant's motion.

BOP's "action plan" is described in detail at www.bop.gov/coronavirus/. As part of that plan, all newly arriving inmates are quarantined and not released into the general population until 14 days have passed and the inmate has tested negative; inmate movement within an institution is restricted in order to promote social distancing; mask wearing by inmates and staff is required; all facility staff are screened for symptoms daily; social visiting has been suspended at nearly all institutions; and access by other outsiders is restricted to only those performing essential services, who are also screened before entry.

In addition, acting under the authority granted in the CARES Act, BOP has transferred many thousands of inmates to home confinement, focusing on nonviolent offenders who have served the majority of their sentences.[5] This initiative, combined with the reduced number of new arrivals during the pandemic and the ordinary release of prisoners upon completion of their sentences, has led to a dramatic decrease in the total BOP population, which in turn has increased opportunities for social distancing and reduced the strain on BOP resources. The total BOP population, which was approximately 170,000 at the beginning of the pandemic, is now more than 10% lower, at the lowest level in decades.

---

[5] In contrast to BOP, this Court does not have authority to grant a transfer to home confinement, or review BOP's administrative decision regarding that issue. *See* 18 U.S.C. § 3621(b) (BOP's designation decision is not subject to judicial review); *see United States v. DiBiase,* 857 Fed. App'x 688, 689-90 (2d Cir. 2021) ("This Court has not determined whether a district court has the power to order a defendant to serve his term of imprisonment in home confinement. Other Circuits, however, have held that this power rests solely with the [BOP]. *See, e.g.*, *United States v. Houck*, 2 F.4th 1082, 1085 (8th Cir. 2021). Indeed, the Supreme Court has recognized that the power to determine a prisoner's place of imprisonment 'rests with the BOP.' *Tapia v. United States*, 564 U.S. 319, 331." (2011) (summary order)); *see also Levine v. Apker,* 455 F.3d 71, 83 (2d Cir. 2006) ("The BOP is the sole agency charged with discretion to place a convicted defendant within a particular treatment program or a particular facility.") (citation omitted); *United States v. Kanagbou*, 726 F. App'x 21, 25 n.1 (2d Cir. 2018) (summary order) ("[I]t is well established that the district court does not control how the Executive Branch carries out a defendant's sentence.")); *see also, e.g.,* United States v. Konny, 463 F.Supp.3d 402, 405 (S.D.N.Y. 2020) ("The authority to place a prisoner in home confinement rests with the BOP under 18 U.S.C. § 3624(c)(2), and the discretion to make such an order "lies solely with the Attorney General.") (citation omitted); United States v. Woody 463 F.Supp.3d 406, 408-09 (S.D.N.Y. 2020); *United States v. Miles*, No. 11 CR. 581, 2020 WL 1989290, at *1 (S.D.N.Y. Apr. 27, 2020) ("The Court, however, lacks the authority to" release the defendant to home confinement.) (citation omitted); United States v. Delgado, 457 F. Supp. 3d 85, 87 n.1 (D. Conn. 2020) (" The Court, does not have authority, however, to grant such relief, as Congress has vested the BOP with the power to grant furloughs and to place prisoners in home confinement") (citations omitted); *United States v. Mabe*, 2020 U.S. Dist. LEXIS 66269, at *1 (E.D. Tenn. Apr. 15, 2020) ("the CARES Act places decision making authority solely within the discretion of the Attorney General and the Director of the Bureau of Prisons. . . . This Court therefore does not have power to grant relief under Section 12003 of the CARES Act.").

When an outbreak does occur, any infected inmate is immediately quarantined, and all contacts (including entire housing units if warranted) are tested and quarantined as necessary, until all contacts return at least two negative tests in a two-week period.

All of these strenuous efforts have been fruitful. To be sure, there is no way to stop this virus short of widespread vaccination, and inmates inevitably will be infected, and some may succumb, just as in the population at large. But it is notable that the rate of deaths in federal prisons as a whole has been lower than that in the general U.S. population, a notable achievement given the known risks of viral spread in a congregate prison setting.

Guzzone is housed at FCI Ft. Dix. While Ft. Dix did experience a significant outbreak of COVID-19 in 2020 and early 2021, prior to Guzzone's arrival and before vaccinations became widely distributed, BOP's aggressive efforts have been particularly intensive there, and are now largely successful. The number of cases at Ft. Dix has fallen precipitously since vaccinations became widespread, and the epidemic has more recently remained at very manageable levels. As of this writing, the BOP website reports that there are currently seven cases among the 3,171 inmates housed at Ft. Dix and five cases among staff.[6] Among inmates, this represents an incidence of 0.22% of the inmate population. The latest statistics are available at www.bop.gov/coronavirus.[7]

## II. Discussion

### a. Applicable Law

Under 18 U.S.C. § 3582(c)(1)(A)(i), as amended by the First Step Act, the court "may not modify a term of imprisonment once it has been imposed," except that:

> [T]he court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that . . . extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

*Id.* The Sentencing Commission, prior to the First Step Act's amendment of Section 3582, had promulgated a policy statement on compassionate release, U.S.S.G. § 1B1.13. The Second Circuit, however, has construed this policy statement as applicable only to compassionate release motions brought by the BOP, not those brought by defendants. *See United States v. Brooker*, 976 F.3d 228, 234-36 (2d Cir. 2020).

---

[6] *See* https://www.bop.gov/coronavirus/ (number of cases) and https://www.bop.gov/locations/institutions/ftd/ (number of inmates).

[7] As set forth at that website, more than 1,700 individuals at Ft. Dix tested positive of COVID-19. The vast majority of these, and each of the two deaths attributed to COVID-19 at the facility, occurred before vaccinations became widely available and before Guzzone arrived in April 2021.

Thus, in instances such as this, involving a motion brought by the defendant rather than by the BOP, there are three prerequisites for granting a compassionate release motion. First, the defendant must have exhausted his administrative rights. *See* 18 U.S.C. § 3582(c)(1)(A). Second, the court must find that "extraordinary and compelling reasons warrant" a reduction of sentence. 18 U.S.C. § 3582(c)(1)(A)(i). And third, the court must consider the sentencing factors set forth in 18 U.S.C. § 3553(a). 18 U.S.C. § 3582(c)(1)(A). Those factors include, among others: "(1) the nature and circumstances of the offense and the history and characteristics of the defendant," and "(2) the need for the sentence imposed . . . to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense . . . to afford adequate deterrence to criminal conduct . . . [and] to protect the public from further crimes of the defendant." 18 U.S.C. § 3553(a). As the proponent of the motion, the defendant bears the burden of proving that he is entitled to the requested relief under Section 3582. *See United States v. Butler*, 970 F.2d 1017, 1026 (2d Cir. 1992) ("A party with an affirmative goal and presumptive access to proof on a given issue normally has the burden of proof as to that issue."); *United States v. Ebbers*, 432 F. Supp. 3d 421, 426 (S.D.N.Y. 2020) ("The defendant has the burden to show he is entitled to a sentence reduction." (citing *Butler*)); *United States v. Givens*, 2020 WL 4699042, at *2 (S.D.N.Y. Aug. 13, 2020) (similar).

### b. Defendant's Motion is Barred Because He Has Failed to Exhaust His Administrative Remedies

The defendant makes no claim in his motion to have exhausted his administrative remedies, as required under Section 3582(c). In particular, he makes no claim that he has even initiated a request for compassionate release from the Warden of FCI Ft. Dix. BOP also informs the Government that BOP has no record of any such administrative request from Guzzone.

Section 3582(c)(1)(A) contains mandatory exhaustion language with no statutory exceptions. The plain language of the statute makes clear that a court "may not" modify a sentence unless, as relevant here, the defendant has first "fully exhausted all administrative rights" or waited 30 days after transmitting his request to the warden. Section 3582(c)(1)(A) is a mandatory exhaustion provision with no applicable exceptions. *Cf. Fry v. Napoleon Community Schools*, 137 S. Ct. 743, 750 (2017) (statute requiring that certain types of claims "shall be exhausted" is a mandatory exhaustion provision for those types of claims). As Circuit Judge Sullivan, sitting by designation, has explained, Section 3582(c)'s exhaustion requirement is "clear as day" and is mandatory. *United States v. Ogarro*, No. 18 Cr. 373 (RJS), 2020 WL 1876300, at *3 (S.D.N.Y. Apr. 14, 2020).

Since the beginning of the pandemic, numerous defendants around the country have cited the unusual circumstances presented by COVID-19 as a basis for compassionate release, and have argued that the exhaustion requirement should be excused.[8] However, the courts of appeals have consistently rejected this argument and required exhaustion. *See United States v. Sanford,* 986 F.3d 779, 782 (7th Cir. 2021); *United States v. Franco*, 973 F.3d 465, 468 (5th Cir. 2020); *United States v. Raia*, 954 F.3d 594 (3d Cir. 2020); *United States v. Alam*, 960 F.3d 831 (6th Cir. 2020) *United States v. Johnson,* 849 Fed. App'x 750, 753 (10th Cir. 2021) (summary order) (every other Court of Appeals to have addressed the issue has agreed") (citations omitted)); *United States v.*

---

[8] It is not clear whether Guzzone seeks to raise such an argument, since he does not even assert that he has pursued any administrative remedies. His only mention of administrative remedies is the following: "As a pro se Petitioner, locked down, with no resources, with staff in such short order that none of the regular administrative mechanisms are in place, it is almost impossible to litigate." (Defendant's Motion, ECF No. 33 ("Mot.") at 8.)

*Rodrigues*, 847 Fed. App'x 609, 611 (11th Cir. Feb. 17, 2021) (summary order); *United States v. Sanders*, 2020 WL 6273906 at *3 & n.1, No. 17-cr-456 (RA) (Oct. 26, 2021) (collecting S.D.N.Y. cases, reflecting a split regarding whether this requirement is waivable). In *Raia*, the Third Circuit recognized the serious concerns presented by COVID-19, but held that, in light of these concerns, as well as the BOP's statutory role and its "extensive and professional efforts to curtail the virus's spread, . . . strict compliance with Section 3582(c)(1)(A)'s exhaustion requirement takes on added—and critical—importance." 954 F.3d at 597. These decisions are consistent with the plain language of Section 3582(c).

Here, Guzzone does not even claim to have made any request to Warden at Ft. Dix, let alone to have exhausted his administrative remedies. This fact alone requires that his motion be denied. Because such exhaustion is mandatory, the Court lacks the authority to grant compassionate release at this time.[9]

### c. The Defendant Has Not Established an Extraordinary and Compelling Reason for Compassionate Release

Defendant's motion relies primarily on his assertions that he has an asthma condition, and that one of the two inhalers that he has been prescribed is a corticosteroid.

Defendant's asthma condition appears to be well controlled with the medication and medical care provided by BOP medical personnel at FCI Ft. Dix. Upon his arrival in BOP custody, the defendant was promptly provided with two different types of anti-asthma inhalers, as well as refills when needed. (Med. Rec. 7-8, 13, 39.) The defendant's medical records do not report any asthma attack during his incarceration, or any other asthma-related issues or complaints during his incarceration. Specifically, the defendant's medical records reflect that he has had asthma since 2001, with no history of endotracheal intubation. His pattern of asthma has been unchanged since its inception in 2001, with "no worsening of it or new symptom." (Med. Rec. 4.) It is also noteworthy that the CDC list of conditions that may subject an individual to a heightened risk of serious illness is limited to "moderate to severe" cases of asthma. (https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/asthma.html.) The defendant's medical records do not clearly indicate that he has such a condition.

Importantly, the defendant's motion leaves out critical information. First and foremost, shortly following his arrival on April 19, 2021, BOP arranged for the defendant to receive the full two-dose regimen of the Moderna vaccine, which was administered on May 12 and June 9, 2021.[10] (Med. Rec. 5, 9, 45.) This powerfully undermines Guzzone's attempt to show an "extraordinary

---

[9] It should also be noted—as acknowledged in the defendant's motion papers—that Guzzone is expected to be subject to a detainer lodged by the State of New York, once he is sentenced, on December 9, 2021, on his underlying state charges for money laundering related to the $1.45 million in bribes that he received. (*See* Mot. at 36 (attached letter of Oct. 22, 2021.)) At the time that the Government entered into the federal plea agreement with the defendant, the defense informed us that the defendant's state plea agreement provides that his state sentence will be imposed to run concurrently with his federal sentence. Accordingly, at the defendant's request, and as set forth in the federal plea agreement, the defendant's state sentencing is to follow his federal sentencing. (*See* Attachment 1 at p.2 n.1).

[10] This despite the fact that the defendant himself, while at liberty, apparently failed to obtain a COVID-19 vaccination prior to surrendering to BOP custody, despite the fact that such vaccines were widely available and defendant was fully eligible.

and compelling" reason for release pursuant to Section 3582(c)(1)(A)(i). *See, e.g.*, *United States v. Alvarez-Espinoza,* 2021 WL 2661477 (D. Ariz. June 29, 2021) ("Defendant's [Moderna] vaccination further mitigates his risk of becoming severely ill from COVID-19, and the rare threat of a COVID-19 reinfection does not present an extraordinary and compelling reason to grant compassionate release.") (collecting cases); *United States v. Cava,* 2021 WL 2210067 (M.D. Fla. June 1, 2021) ("Defendant's vaccination precludes his argument that his exposure to Covid-19 is extraordinary and compelling for purposes of § 3582(c)(1)(A)."); *United States v. Smith*, 2021 WL 364636, at *2 (E.D. Mich. Feb. 3, 2021) ("absent some shift in the scientific consensus, Defendant's vaccination against COVID-19 precludes the argument that his susceptibility to the disease is 'extraordinary and compelling' for purposes of § 3582(c)(1)(A)."); *United States v. Purry*, 2020 WL 5909793, at *2 (D. Nev. Oct. 6, 2020) ("[A] possibility that is unconfirmed by science is insufficient to create an extraordinary and compelling circumstance justifying [Defendant's] release.") (Citations omitted). Guzzone's vaccination regimen has dramatically decreased the likelihood that the defendant will test positive for COVID-19, and even more dramatically reduced the likelihood that he will suffer a severe case of the disease. *See, e.g.,* Website of the Centers for Disease Control, at https://www.cdc.gov/coronavirus/2019-ncov/vaccines/fully-vaccinated.html. Vaccinations are similarly important and beneficial for persons suffering from diseases that increase their risk of serious illness from the disease, include moderate or severe cases of asthma. *See https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html.*

As a result, the defendant's motion for compassionate release should be denied. As noted, the pertinent guideline policy statement treats as an "extraordinary and compelling" circumstance "a serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G. § 1B1.13 app. note 1(A)(ii). The government during the pandemic has acknowledged that an unvaccinated inmate who presents a medical risk factor identified by the CDC as increasing the risk of an adverse outcome from COVID-19, and who is not expected to recover from that condition, presents an extraordinary and compelling circumstance under that provision.

That circumstance now does not exist in this case. The defendant has received a Moderna vaccine regimen approved by the Food and Drug Administration ("FDA") for emergency use based on its conclusion that, in extensive testing, the vaccine was approximately 95% effective in preventing COVID-19 infection, including in participants with medical comorbidities associated with high risk of severe COVID-19. *See* FDA Decision Memorandum, Moderna - Dec. 18, 2020, https://www.fda.gov/media/144673/download. Various studies continue to confirm the efficacy of the vaccines. For instance, on April 1, 2021, Pfizer reported its follow-up study on the 44,000 participants in its Phase 3 trial. It found that the vaccine, based on mRNA technology (like the Moderna vaccine), was 91.3% effective against COVID-19, measured seven days through up to six months after the second dose, across age, gender, race, and ethnicity demographics, across participants with a variety of underlying conditions, and during a period through March 13, 2021, when variants were circulating. Pfizer further found that the vaccine was 100% effective against severe disease as defined by the CDC and 95.3% effective against severe disease as defined by the FDA. https://www.businesswire.com/news/home/20210401005365/en/. The CDC likewise recently reported the effectiveness of the Pfizer and Moderna vaccines in preventing infection during the same period, and concluded that its extensive data "reinforce CDC's recommendation of full 2-dose immunization with mRNA vaccines. COVID-19 vaccination is recommended for all

eligible persons . . . ." "Interim Estimates of Vaccine Effectiveness," https://www.cdc.gov/mmwr/volumes/70/wr/mm7013e3.htm (Mar. 29, 2021).

Recent decisions overwhelmingly agree with this assessment. *See, e.g.*, *United States v. Cortez*, 2021 WL 689923 (D. Ariz. Feb. 23, 2021);; *United States v. Grummer*, 2021 WL 568782, at *2 (S.D. Cal. Feb. 16, 2021) (denying compassionate release to defendant with several chronic medical conditions when defendant had been fully vaccinated against COVID-19); *United States v. Poupart*, 2021 WL 917067, at *1 (D. Conn. Mar. 10, 2021); *United States v. Shepard*, 2021 WL 848720, at *5 (D.D.C. Mar. 4, 2021); *United States v. Stewart*, 2021 WL 1011041, at *2 (D. Haw. Mar. 16, 2021); *United States v. Johnson*, 2021 WL 863754, at *2 (W.D. Ky. Mar. 8, 2021); *United States v. Jones*, 2021 WL 1172537, at *2 (E.D. La. Mar. 29, 2021); *United States v. McGill*, 2021 WL 662182, at *5 (D. Md. Feb. 19, 2021); *United States v. Gabbard*, 2021 WL 1037724, at *3 (E.D. Mich. Mar. 18, 2021) (Cox, J.); *United States v. Williams*, 2021 WL 1087692, at *3 (D. Minn. Mar. 22, 2021); *United States v. Williams*, 2021 WL 966028, at *3 (W.D.N.C. Mar. 15, 2021); *United States v. Kosic*, 2021 WL 1026498, at *2 (S.D.N.Y. Mar. 17, 2021) (also rejected other objections based on conditions at Fort Dix, where the inmate received the first dose of the Moderna vaccine, and also recovered from COVID-19); *United States v. Cardoza*, 2021 WL 932017, at *1 (D. Or. Mar. 11, 2021); *United States v. Roper*, 2021 WL 963583, at *4 (E.D. Pa. Mar. 15, 2021) ("The risk posed to an inoculated Mr. Roper is not an extraordinary and compelling reason for his release."); *United States v. Stiver*, 2021 WL 1110593, at *1 (W.D. Pa. Mar. 23, 2021); *United States v. Beltran*, 2021 WL 398491, at *3 (S.D. Tex. Feb. 1, 2021) (denying compassionate release to defendant with underlying health conditions when defendant had received first vaccine dose); *United States v. Ballenger*, 2021 WL 308814, at *4 (W.D. Wash. Jan. 29, 2021).

### d. A Reduction in Sentence is Not Appropriate Based on the 3553(a) Factors

Even if the defendant had established an extraordinary and compelling reason for compassionate release, the requested reduction would still be inconsistent with the sentencing factors in 18 U.S.C. § 3553(a). *See* 18 U.S.C. § 3582(c)(1)(A); *see also United States v. Lisi*, 440 F. Supp. 3d 246, 252-53 (S.D.N.Y. Feb. 24, 2020) (denying compassionate release motion where "[t]he sentencing factors weigh heavily against the reduction of [the defendant's] sentence to time served); *see also United States v. Israel*, 2019 WL 6702522, at *2 ("The court confronted with a compassionate release motion is still required to consider all the Section 3553(a) factors to the extent they are applicable, and may deny such a motion if, in its discretion, compassionate release is not warranted because Section 3553(a) factors override, in any particular case, what would otherwise be extraordinary and compelling circumstances.").

Here, the sentencing factors weigh against reducing the defendant's sentence. At sentencing, the Court carefully calibrated the defendant's 38-month sentence, a downward variance from the Guidelines range of 46 to 57 months stipulated in the defendant's plea agreement and in the PSR, and below the 46-month sentence recommended by the Probation Office in the PSR (at p. 30). As is clear from the Court's comments at the time of sentencing, the defendant committed a very grave offense that warrants a substantial sentence. Not only did the defendant admit to receiving some $1.45 million in bribes over an eight-year period, and to failing to pay any taxes on those bribes, but he also to this day continues to enjoy the fruits of his crime, having never been called upon to pay any restitution beyond the order imposed by this Court (which was legally limited to the taxes due on his bribes, but not the underlying bribes themselves).

This Court considered the above-mentioned and other Section 3553(a) factors in determining that a below-Guidelines sentence of 38 months' imprisonment was appropriate. None of those factors has changed meaningfully since the defendant's sentencing in January of this year. Indeed, the two factors upon which Guzzone relies most heavily—the COVID epidemic and his own asthma—are no worse than they were at the time of sentencing, and were both fully known to this court at the time sentence was imposed. (*See* PSR ¶ 66). Indeed, as noted *supra,* defendant's medical records do not report any asthma attack during his incarceration, or any other asthma-related issues or complaints. There is also no indication in those records that the defendant's asthma condition is moderate or severe. His pattern of asthma has been unchanged since its inception in 2001, with "no worsening of it or new symptom." (Med. Rec. 4.) This lack of new adverse circumstances is even more clear with reference to the COVID epidemic itself. Cases have come down dramatically in federal prisons, vaccinations have become widespread, and the defendant himself has been fully vaccinated. Accordingly, there are no negative circumstances that were not known to this Court at the time of sentencing.

The defendant has served only seven months' imprisonment, less than one fifth of his 38-month sentence. His projected release date of December 29, 2023 remains more than two years away. The Court acknowledged the seriousness of the offense conduct at the time of imposing sentence and a further reduction of his sentence would result in a windfall benefit not warranted by the Section 3553(a) factors.

## Conclusion

For the reasons set forth above, the defendant's motion should be denied.

Respectfully submitted,

DAMIAN WILLIAMS
United States Attorney

By: ___S/_____
DAVID RAYMOND LEWIS
Assistant United States Attorney
STANLEY J. OKULA
Sr. Litigation Counsel, USDOJ Tax Division
(646) 787-5645 / 646-294-0846

cc: Alex Spiro, Esq. (by ECF & email)
Anthony Guzzone (by certified mail)