

U.S. Department of Justice

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

June 1, 2022

BY ECF

Hon. Lewis J. Liman
United States District Judge
Daniel Patrick Moynihan U.S. Courthouse
500 Pearl Street
New York, New York 10007

Re: United *States v. Anthony Guzzone*, 20 Cr. 354 (LJL)

Dear Judge Liman:

The United States respectfully submits this letter in response to the Court's order of May 27, 2022 in the above-referenced case (Dkt. No. 40), directing the Government to respond to an undated *pro se* letter from defendant Anthony Guzzone ("Defendant's Letter") attached to the Court's order.

While Defendant's letter contains various ruminations of regret about the decisions that led to the defendant's state and federal crimes and convictions, its request for legal relief is essentially a wish that the First Step Act ("FSA") were written differently than it is, and that this Court had the authority and the factual basis to modify the defendant's sentence to enable him to be released sooner. The wishes expressed in that letter—wishes probably common to many federal inmates—find no basis in law, nor do they find any justification in the factual record before this Court. For the reasons that follow, the defendant's request that this Court review and modify his sentence should be rejected.

I. CONSTRUING THE DEFENDANT'S LETTER

"'A judgment of conviction that includes a sentence of imprisonment constitutes a final judgment' and may not be modified by a district court except in limited circumstances." *Dillon v. United States*, 560 U.S. 817, 824 (2010) (quoting 18 U.S.C. § 3582(b)). Accordingly, it is difficult to find any way to construe the Defendant's Letter as an application founded in applicable law.

In the Government's view, the most liberal construction that can be given to the letter is to treat it as a motion for "modification of an imposed sentence," pursuant to 18 U.S.C. § 3582(c)(1)(A)(i), since the Government does not perceive any other basis for a motion to reduce the defendant's sentence. But even so construing the letter, the motion fails for three sets of reasons. *First*, the motion should be denied for failure to exhaust administrative remedies. 18 U.S.C. § 3582(c)(1)(A). *Second*, because the defendant has failed to identify any "extraordinary and compelling reasons that warrant such a reduction," the Court is without authority to reduce Guzzone's sentence. § 3582(c)(1)(A)(i). This is particularly so given that the FSA expressly precludes the sort of sentencing credit that Guzzone is seeking. *Third*, even if Guzzone met that statutory standard, the sentencing factors set forth in 18 U.S.C. § 3553(a)—including the seriousness of the defendant's federal offense, his independent conviction for a serious state offense, the fact that he has not identified any sentencing factors that were not already known to the Court at the time of sentencing, and the need to avoid unwarranted disparity in sentencing—do not support any reduction in the defendant's sentence.

## II. BACKGROUND

### a. The Defendant's Offense Conduct, State and Federal Guilty Pleas, and Sentencing

The defendant held top executive positions in construction at Bloomberg LP ("Bloomberg"), ultimately in the very well-paid position of Bloomberg's Global Project Manager.

Prior to being charged in the instant case, the defendant was one of numerous co-conspirators charged in New York Supreme Court in a 72-count indictment with participating in a massive scheme "to steal money from Bloomberg by inflating subcontractor bids, creating fictitious change and/or work orders, and misappropriating unused allowance money." (Presentence Investigation Report ("PSR") ¶ 48.) As part of that scheme, Guzzone and other construction managers at Bloomberg and Turner Construction conspired with subcontracting companies to assist in carrying out thefts from Bloomberg by "bid-rigging, falsifying business records, and the paying [and receiving] of commercial bribes." (*Id*.) The scheme was concealed, in part, through the "laundering of criminal proceeds." (*Id*.) As stipulated in his federal plea agreement (Attachment 1 to Dkt. No. 35), Guzzone was one of the leaders and organizers of the scheme, which lasted for eight tax years, and involved five or more participants as bribe-recipients. (*Id*. ¶ 2.)[1]

On August 17, 2020, prior to pleading guilty in the instant case, the defendant pled guilty in New York Supreme Court to money laundering in the third degree, a class D felony, in violation of New York Penal Law §§ 470.10(1)(b)(i)(A) and (iii). (PSR at 4 n.1.) The defendant entered into a state plea agreement with the District Attorney's Office for New York County ("DANY"), which provided, *inter alia*, that he would receive an indeterminate sentence of three to nine years, which would be imposed concurrently with any federal sentence.[2]

On September 29, 2020, before this Court, the defendant pleaded guilty to a one-count Information charging him with tax evasion for the tax years 2010 through 2017. The defendant—a well-educated, highly-compensated, construction-industry official—led a multi-year fraud scheme to solicit and pocket unlawful payments in the form of bribes and kickbacks. As the PSR makes clear, during the years when he was serving as a leader of the bribery/kickback scheme, Guzzone was being paid a salary of hundreds of thousands of dollars per year, providing him a comfortable lifestyle and economic security. The defendant then furthered that scheme by willfully failing to report the illicit income on his income tax returns, resulting in significant tax evasion. The defendant's tax crimes spanned eight separate tax years and involved not only the willful omission of over $1,450,000 of bribe income from his federal and state tax returns, but untold losses to his employer through the underlying honest services fraud.

---

[1] According to the March 20, 2022 transcript of the defendant's state court sentencing, he was initially charged in New York State court in two separate indictments, for participating in two distinct bribery schemes, but those charges were ultimately consolidated and disposed of in a single proceeding. (*See* Dkt. 40 at 14.)

[2] At the defendant's request, the federal plea agreement in this case (Att. 1 to Dkt. No. 36) provided that the Government would not object to the defendant's efforts to have his sentencing before this Court precede his sentencing in New York Supreme Court. (*See Id*. At p.2 n.1.) The defendant sought this arrangement so that he could effectuate his state plea agreement with DANY, which provided that his state prison term would be concurrent with his federal prison term. (*Id*.)

On January 19, 2021, this Court sentenced the defendant to 38 months of imprisonment, three years of supervised release, and restitution in the amount of $574,005.33. While this sentence of 38 months' imprisonment was unquestionably substantial, as required by the seriousness of the defendant's offense conduct, the defendant was the only one of the four targets of this investigation who received a sentence below the applicable Guidelines range. The two co-conspirators whose conduct most closely paralleled that of the defendant were respectively sentenced to 46 months and 51 months of imprisonment.[3] Similarly, while the restitution imposed in this case was also substantial, it had the effect of separating the defendant only from the taxes that he owed on the $1.45 million in bribes that he received. The defendant continues to enjoy the financial fruits of his bribery, having never repaid the bribes themselves. Nor has he paid any restitution to Bloomberg, the victim of his related honest services fraud.

### b. Proceedings Since Federal Sentencing

On April 19, 2021, the defendant surrendered to the custody of the U.S. Bureau of Prisons ("BOP"), to begin serving his 38-month sentence. His projected release date is December 29, 2023. https://www.bop.gov/mobile/ find_inmate/byname.jsp, representing some 32 months in federal custody.

On October 25, 2021, the defendant brought his first motion for modification of his sentence, pursuant to 18 U.S.C. § 3582(c)(1)(A)(i), seeking compassionate release based on medical arguments relating to COVID-19. By order dated November 18, 2021, this Court denied that motion. Most significantly for present purposes, in addition to finding that the defendant had not exhausted his administrative remedies or shown any "'extraordinary and compelling' circumstances that would justify compassionate release," this Court found that the sentencing factors set forth in 18 U.S.C. § 3553(a) provided an "alternative and independent basis for denial of compassionate release." (Order at 3, Nov. 18, 2021, Dkt. No. 37) (quoting *United States v. Jones,* 17 F.4th 371, 374 (2d Cir. 2021). In so holding, this Court stated:

> [A]s the Court observed at the time of sentencing, Guzzone's crime was "very serious," warranting a "serious and substantial sentence." Dkt. No. 28 at 43. His criminal activity took place over a long period of time, and it resulted in a substantial amount of tax due and owing. *Id.* at 43–44. It was also part of a larger pattern of criminal activity by Guzzone in which he took bribes and deprived his employer of honest services and resulted in a breach by Guzzone of the trust which had been placed in him by his employer. The Court specifically considered in connection with the sentence the fact that Guzzone would have to serve time during the COVID-19 pandemic and that as a result, the time he would serve would be harder than prior to the pandemic. It gave him a lighter sentence as a result. *Id.* at 49. Guzzone has not brought to the attention of the Court any facts that would mitigate his sentence that the Court was not aware of at the time of sentencing.

(Dkt. No 37 at 3.)

### c. The Defendant's State Sentencing

Pursuant to the terms of the defendant's State plea agreement with DANY, the defendant was sentenced on March 16, 2022, as agreed, to an indeterminate sentence of three to nine years,

---

[3] *See United States v. Olson,* 20 Cr. 356 (PKC) and *United States v. Nigro,* 20 Cr. 370 (AT).

to be served concurrently with his federal sentence.[4] (Dkt. 40 at 24.) As the New York Supreme Court justice noted at sentencing:

> The sentence is warranted … by the need to acknowledge the seriousness of the crime and the harm that it does, not only to [the employers] who trusted Mr. Guzzone with their money … or to the people who worked for [the employers] or [to] anybody else that is not receiving kickbacks or taking bribes.
>
> This was a *theft of staggering proportions* and *Mr. Guzzone was a key player* in that.

(State Sent. Transcript, Dkt. 40 at 23 (emphasis added).)

### d. The Defendant's Letter

While Guzzone's *pro se* letter does not rely upon any specific legal provisions, it is basically a request that this Court reduce the defendant's sentence of imprisonment from 38 months' imprisonment (which has resulted in a presumptive release date in December 2023) to a shorter sentence, with the defendant apparently wishing for a presumptive release date of December 2022.[5] The only argument that the defendant advances for this application is his view that the First Step Act of 2018, (Pub. L. No. 115-391)—which provides mechanisms for eligible federal inmates to receive "earned time credits" for the completion of certain programs in federal custody—should have been written not only to provide for earlier release dates for inmates who are eligible to be placed in community confinement, home confinement, or on supervised release; but also to provide for accelerated release dates for inmates, like the defendant, who are simultaneously serving a state sentence for other crimes. As discussed below, the FSA specifically proscribes the application of ETC to inmates like the defendant, who are simultaneously serving a state sentence.

### III. DISCUSSION

In construing the *pro se* Defendant's Letter as liberally as possible, the Government approaches that letter as the defendant's second motion for modification of his sentence pursuant to 18 U.S.C. § 3582(c)(1)(A)(i). The Government so construes the Letter because we do not perceive any other basis upon which the defendant could ask a court to amend his sentence at this point.

### a. Applicable Law

As is now familiar to all in this case, 18 U.S.C. § 3582(c)(1)(A)(i), as amended by the First Step Act, provides that a sentencing court "may not modify a term of imprisonment once it has been imposed," except that:

> [T]he court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all

---

[4] The defendant's state-court sentence is concurrent with his federal sentence, *nunc pro tunc*, to the defendant's federal surrender date of April 19, 2021. (*See* State Sent. Transcript, Dkt. No. 40 at 24.)

[5] One effect of the defendant's failure to exhaust administrative remedies is that it is not at all clear that, even if the defendant were eligible to receive ETC, his transfer federal to state custody would actually be, as he suggests, accelerated by an entire year.

> administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment . . . after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that . . . extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

*Id*. The Sentencing Commission, prior to the First Step Act's amendment of Section 3582, had promulgated a policy statement on compassionate release, U.S.S.G. § 1B1.13. The Second Circuit, however, has construed this policy statement as applicable only to compassionate release motions brought by the BOP, not those brought by defendants. *See United States v. Brooker*, 976 F.3d 228, 234-36 (2d Cir. 2020).

Thus, in instances such as this, involving a motion brought by the defendant rather than by the BOP, there are three prerequisites for granting a motion for modification of sentence. This Court recognized these three prerequisites in its Order denying Guzzone's first such motion. (Dkt. No. 37.) First, the defendant must have exhausted his administrative rights. *See* 18 U.S.C. § 3582(c)(1)(A). Second, the court must find that "extraordinary and compelling reasons warrant" a reduction of sentence. *Jones*, 17 F.4th at 374 (citing 18 U.S.C. § 3582(c)(1)(A)(i)). And third, the court must consider the sentencing factors set forth in 18 U.S.C. § 3553(a). (*Id*.) Those factors include, among others: "(1) the nature and circumstances of the offense and the history and characteristics of the defendant;" "(2) the need for the sentence imposed . . . to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense . . . to afford adequate deterrence to criminal conduct . . . [and] to protect the public from further crimes of the defendant;" and "(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a). As the proponent of the motion, the defendant bears the burden of proving that he is entitled to the requested relief under Section 3582. *See Jones,* 17 F.4th at 375 (quoting *United States v. Butler*, 970 F.2d 1017, 1026 (2d Cir. 1992) ("If the defendant seeks decreased punishment, he or she has the burden of showing that the circumstances warrant that decrease.")).

### b. Defendant's Motion is Barred Because He Has Failed to Exhaust His Administrative Remedies

Admittedly, the defendant does not appear to have perceived his *pro se* letter as a motion pursuant to 18 U.S.C. § 3582(c)(1)(A)(i). But given that the Government perceives no other provision that could provide the defendant with a basis to seek a modified sentence, this seems the most generous way to construe the letter. Accordingly, the defendant remains bound by the administrative-exhaustion requirements of that statute.

The defendant makes no claim in his motion to have exhausted his administrative remedies, as required under Section 3582(c)(1)(A). The closest he comes is to describe some informal conversation with an "Officer Higgins"—apparently the defendant's case manager—who reportedly orally expressed the opinion that the defendant would not be granted administrative relief, and that the defendant's only hope for a shorter sentence was an application to this Court. *See* Dkt. No. 40 at 2.

The Government expresses no view on whether this purported conversation with the officer took place as reported. But whatever the case, this informal conversation cannot be deemed to satisfy the administrative-exhaustion language in Section 3582(c)(1)(A). That statute contains mandatory exhaustion language with no statutory exceptions. The plain language of the statute makes clear that a court "may not" modify a sentence unless, as relevant here, the defendant has first "fully exhausted all administrative rights" or waited 30 days after transmitting his request to the warden. Section 3582(c)(1)(A) is a mandatory exhaustion provision with no applicable exceptions. *Cf. Fry v. Napoleon Community Schools*, 137 S. Ct. 743, 750 (2017) (statute requiring that certain types of claims "shall be exhausted" is a mandatory exhaustion provision for those types of claims). As Circuit Judge Sullivan, sitting by designation, has explained, Section 3582(c)'s exhaustion requirement is "clear as day" and is mandatory. *United States v. Ogarro*, No. 18 Cr. 373 (RJS), 2020 WL 1876300, at *3 (S.D.N.Y. Apr. 14, 2020).

And as this Court observed in denying Guzzone's first motion for compassionate release, there is no basis here to waive the administrative-exhaustion requirement, even if it is not found to be jurisdictional. As this Court noted:

> Assuming the requirement is not jurisdictional, Guzzone still has not presented "an extraordinary circumstance, not of [his] own making, [that would] stan[d] as a substantial obstacle to him obtaining the meaningful relief that Congress intended" if he had to exhaust administrative remedies or that would relieve him from the obligation to exhaust. *See United States v. Russo*, 454 F. Supp. 3d 270, 278 (S.D.N.Y. 2020) (holding that exhaustion requirement is not jurisdictional but that movant has to show an "extraordinary circumstance"). His motion therefore is not ripe. The Court denies Guzzone's application for that reason alone.

(Order, Dkt. No. 37 at 2.)

The same holds true on this second motion. Here, Guzzone does not even claim to have made any administrative request to the Warden at Ft. Dix, where he is incarcerated. This fact alone requires that his motion be denied. Because such exhaustion is mandatory, the Court lacks the authority to grant compassionate release at this time.

### c. The Defendant Has Not Established an Extraordinary and Compelling Reason for Compassionate Release

The defendant seems primarily to base his motion on the argument that, since the FSA created new provision whereby eligible inmates can now obtain "earned time credits" ("ETC") that make them eligible more quickly for release to community confinement, home confinement, or supervised release, then Congress should have expanded the FSA eligibility to encompass inmates like the defendant, so that he too could use such credits to more quickly complete his federal term of imprisonment on his federal tax conviction, and so to transfer to state custody to serve the remainder of his concurrent New York State sentence, for bribery and money laundering, of three to nine years' imprisonment.

To succeed with his application for modification of his sentence under Section 3582(c)(1)(A)(i), the defendant must show that "extraordinary and compelling reasons warrant such a reduction." *Id*.

The defendant's arguments fail to meet this standard in at least two respects. *First*, there is nothing relevantly new about the provisions of the FSA that provide ETC for certain inmates, in that there are no relevant statutory provisions that were not already in place when the defendant was sentenced in January 2021. At that time, the FSA—which was signed into law in December 2018—was already fully applicable, and known to the Court and the parties. Whatever arguments the defendant might have chosen to make to the effect that he should receive some sort of sentencing discount because of his ineligibility for ETC under the FSA was available then. Instead, the defendant and his counsel chose to emphasize different arguments at sentencing, including arguments that the defendant had performed many good works, had a caring family, and was contrite about his six years of receiving bribes and evading taxes. Indeed, the defendant used these arguments successfully, as the only one of the four defendants in these four related cases to receive a below Guidelines sentence.[6]

*Second,* the relief that the defendant appears to be seeking is expressly precluded by the relevant statute—the FSA. By its terms, the FSA applies only to a prisoner who is either "being placed in prerelease custody" (that is, home confinement or a residential reentry center) or is "being placed in supervised release." 18 U.S.C. § 3624(g)(1)(D)(i) & (ii); *see also* 28 C.F.R. 523.44(a)(1) ("Application of FSA Time Credits"). Because he is subject to a New York State detainer, and will leave federal custody only to begin serving the remainder of his state sentence, the defendant does not fit into either of these categories.

Indeed, by its express terms, the FSA is **explicitly not applicable** to inmates, like the defendant, who are also serving a state sentence. As set forth in the implementing regulations, the BOP "may not apply FSA Time Credits" toward early release of an inmate who is "serving a term of imprisonment pursuant to a conviction for an offense under laws other than the U.S. Code." 28 C.F.R. § 523.44(a)(3). As noted in that regulation, it is based upon the even more explicit language in the FSA itself, which provides:

> Nothing in this Act, or the amendments made by this Act, may be construed to provide authority to place a prisoner in prerelease custody or supervised release

---

[6] *See United States v. Olson,* 20 Cr. 356 (PKC) (Guidelines sentence of 46 months); *United States v. Nigro,* 20 Cr. 370 (AT) (Guidelines sentence of 51 months); *United States v. Campana,*

> who is **serving a term of imprisonment pursuant to a conviction for an offense under the laws of one of the 50 States**….

FSA § 105, Pub. L. 115-391, 132 Stat. 5214 (not codified; included as note to 18 U.S.C. 3621) (emphasis added); see also 28 C.F.R. § 523.44(a)(3) (implementing FSA § 105).

Thus, Guzzone is unambiguously ineligible to have ETC applied to accelerate the completion of his federal sentence. The defendant is in effect asking this Court in effect to amend that statute so as to widen its reach, something plainly beyond the power of this Court.

The Government is not aware of any case that has addressed this specific issue. In a different but comparable circumstance in *United States v. Pierce,* No. 16-CR-00669 MV, 2020 WL 1876238 (D.N.M. 2020), a defendant who was in state prison while simultaneously serving state and federal sentences asked the federal sentencing court to remove his federal detainer so that he could be transferred to a lower security state facility where he would be eligible to earn greater good-time credits and greater ETC. *Id.* at *1. In rejecting this petition, the court held that the relief sought by defendant Pierce was beyond the statutory authority of the court:

> While the Court commends Mr. Pierce for his commitment to rehabilitation and self-improvement while in custody, it does not have the authority to grant him the requested relief. For one, the First Step Act only affords federal courts the ability to resentence defendants in a narrow set of cases, such as . . . those involving a defendant who qualifies for compassionate release due to "extraordinary and compelling reasons" such as serious illness (*see* 18 U.S.C. § 3582(c)(1)(A)(i)). None of the statutorily enumerated grounds for resentencing apply here, and post-conviction rehabilitation is not by itself a ground for resentencing or early release.
>
> Nor does the Court have the ability to release Mr. Pierce to a halfway house or lift his federal detainer under the provisions of the First Step Act pertaining to custody time credit.

*Id.* at *1-2 (citations omitted).[7]

This result is inescapable. The FSA by its express terms precludes inmates like Guzzone, who are also serving a state sentence, from receiving the benefit of ETC under the FSA.[8]

### d. A Reduction in Sentence is Not Appropriate Based on the 3553(a) Factors

Even if the defendant had established an extraordinary and compelling reason for modification of his sentence, the motion for a reduced sentence should still be denied because it is inconsistent with the sentencing factors in 18 U.S.C. § 3553(a). *See Jones,* 17 F.4th at 375; *United States v. Lisi*, 440 F. Supp. 3d 246, 252-53 (S.D.N.Y. Feb. 24, 2020) (denying compassionate release motion where "[t]he sentencing factors weigh heavily against the reduction of [the

---

[7] In an unreported memorandum decision dismissing a *habeas corpus* petition, *Amato v. Pullen,* No. 3:21-cv-1475 (KAD) (D.Conn. May 10, 2022), the court dismissed the petition for failure to exhaust administrative remedies, and declined to reach the petitioner's claim that he should receive ETC even though he was simultaneously serving a state sentence. (*Id.* at 9-10).

[8] It might also be noted that, with a presumptive release date of December 29, 2023, the defendant will have been in federal custody only 32½ months, since April 19, 2021. So, in any event, he will still face the remaining portion of his state sentence of three to nine years, even without a shorter federal sentence.

defendant's] sentence to time served); *see also United States v. Israel*, 2019 WL 6702522, at *2 ("The court confronted with a compassionate release motion is still required to consider all the Section 3553(a) factors to the extent they are applicable, and may deny such a motion if, in its discretion, compassionate release is not warranted because Section 3553(a) factors override, in any particular case, what would otherwise be extraordinary and compelling circumstances."); 18 U.S.C. § 3582(c)(1)(A).

Here, the sentencing factors weigh heavily against reducing the defendant's sentence. As this Court recognized in its order of November 18, 2021, holding that the § 3553 factors weighed against Guzzone on his first motion for modification of his sentence: "The Court's consideration of the factors set forth at section 3553(a) provides an 'alternative and independent basis for denial of compassionate release'" (citations omitted). As this Court observed both at the defendant's sentencing and again in denying the defendant's first motion for modification of his sentence:

> Guzzone's crime was "very serious," warranting a "serious and substantial sentence." Dkt. No. 28 at 43. His criminal activity took place over a long period of time, and it resulted in a substantial amount of tax due and owing. *Id.* at 43-44. It was also part of a larger pattern of criminal activity by Guzzone in which he took bribes and deprived his employer of honest services and resulted in a breach by Guzzone of the trust which had been placed in him by his employer.

(Dkt. No. 37 at 3.) Those facts are no less true now than they were at sentencing, or at the time that the Court denied Guzzone's first § 3582 motion.

In denying Guzzone's first motion for modification of sentence, this Court also noted that nothing raised by the defendant was new, in that the Court had been fully cognizant of the COVID-19 situation at the time of sentencing, and had imposed a shorter sentence as a result. This is equally true now, with respect to the provisions of the FSA, which—having gone into effect in December 2018—have also not changed since the time of sentencing.

At sentencing, the Court carefully calibrated the defendant's 38-month sentence, a downward variance from the Guidelines range of 46 to 57 months stipulated in the defendant's plea agreement and in the PSR, and below the 46-month sentence recommended by the Probation Office in the PSR (at p. 30). As is clear from the Court's comments at the time of sentencing, the defendant committed a very grave offense that warrants a substantial sentence. Not only did the defendant admit to receiving some $1.45 million in bribes over an eight-year period, and to failing to pay any taxes on those bribes, but he also to this day continues to enjoy the fruits of his crime, having never been called upon to pay any restitution beyond the order imposed by this Court (which was legally limited to the taxes due on his bribes, but not the underlying bribes themselves).

One additional 3553(a) factor is pertinent here. That is the provision that requires a sentencing court to consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6). In the instant case, as noted above, Guzzone is the only one of the four defendants to have received a below-Guidelines sentence. With respect to co-conspirators Ronald Olson and Vito Nigro, who bore similar culpability to Guzzone but who respectively received sentences of 46 and 51 months, any further reduction in Guzzone's sentence would be inconsistent with the "need to avoid unwarranted sentence disparities." *Id.*

The Court acknowledged the seriousness of the defendant's offense conduct at the time of sentencing, and a reduction of his sentence would result in a benefit not warranted by the Section 3553(a) factors.

## Conclusion

For the reasons set forth, to the extent that the Defendant's Letter may be construed as a motion seeking modification of his sentence, that motion should be denied.

Respectfully submitted,

DAMIAN WILLIAMS
United States Attorney

By:    S/
DAVID RAYMOND LEWIS
Assistant United States Attorney
STANLEY J. OKULA
Sr. Litigation Counsel, USDOJ Tax Division
(646) 787-5645 / 646-294-0846

cc:    Defense counsel (by ECF)
       Anthony Guzzone (by certified mail)